By the Court, Bronson, J.
If the defendant arrested the plaintiff under pretence that he had a warrant when in fact he had none, or if he arrested the plaintiff under a warrant issued by a justice of the peace in the county of Herkimer, which had not been endorsed in Schoharie, the imprisonment was in either case unlawful; and a contract procured by such means cannot be supported. It wants the essential ingredient of the free assent of the contracting party. No rights can be acquired by such an act of violence. All the books agree that a man may *157 avoid his deed for duress of imprisonment. Some of the cases hold that the deed may be avoided although the imprisonment was under legal process. In Watkins v. Baird, (6 Mass. R. 506,) Parsons, Ch. J. said: “ It is a sound and correct principle of law, that when a man shall falsely, maliciously, and without probable cause, sue out a process in form regular and legal, to arrest and imprison another, and shall obtain a deed from a party thus arrested to obtain his deliverance, such deed may be avoided by duress of imprisonment: for such imprisonment is tortious and unlawful as to the party procuring it, and he is answerable hi damages for the tort in an action for a malicious prosecution; the suing of legal process being an abuse of the law, and a proceeding to cover the fraud.” And so the matter was adjudged by the whole court. The case before Chief Justice Bridgman at Guild-Hall, (1 Lev. 68, 9,) where a different doctrine was laid down, was entirely disregarded. The authority of that case was also denied in Richardson v. Duncan, (3 N. Hamp. R. 508,) where it was held, that an arrest for a just cause and under lawful authority, if it be made for unlawful purposes, may be constrúed a duress so as to avoid a contract which the party made for his deliverance. And to the same effect is Buller's N. P. 172; 2 Inst. 482; Com. Dig. Pleader, (2 W. 19;) Vin. Ab. Duress, (B.) pl. 25; Inhab. of Whitefield v. Longfellow, (13 Maine R. 146.) But in the view we are now talcing of the case, the imprisonment was unlawful ; and there never was a doubt that a contract obtained by such means might be avoided.
As the evidence left it doubtful whether the plaintiff was actually imprisoned, the judge also instructed the jury as to what would constitute a case of duress per minas; and here it is strenuously insisted that he fell into an error. It is said there must be a threat of life or limb, or of mayhem; and that a man cannot avoid his contract on the ground that it was procured through the fear of illegal imprisonment. But Lord Coke says the fear of imprisonment is enough. (2 Inst. 483; Co. Litt. 253 b.) And so the rule has been understood ever since that time. (Vin. Ab. Duress, (B.) pl. 23; Com. Dig. Plea *158 der, (2 W. 20 ;) Bac. Ab. Duress, (A.); Chitty on Contr. 168, ed. of ’39; Inhab. of Whitefield v. Longfellow, 13 Maine R. 146; Eddy v. Herrin, 17 id. 338; 1 Cowen’s Tr. 264.) It is true that Blackstone, in speaking of duress per minas, (1 Com. 130, 1,) does not mention the fear of imprisonment; but he was only stating the general doctrine, and he says nothing either way upon this point. I do not find that the rule as laid doAvn by Coke has ever been denied.
If a deed might be avoided nearly three centuries ago on the ground that it was procured by threats and the fear of illegal imprisonment, there can be no room for doubt upon the question at the present day. As civilization has advanced, the law has tended much more strongly than it formerly did to overthroAv every thing Avhich is built upon violence or fraud. In the time of Coke, it was said that a man could not avoid his act on the ground that it Avas procured by the fear of battery, burning his house, taking away or destroying his goods, or the like; for there he may have satisfaction by the recovery of damages. (2 Inst. 483.) But Mr. Chitty very justly doubts Avhether such be the rule at the present day, especially in regard to so serious an injury as a threat to burn a man’s house. (Chit. on Contr. 169, ed. of ’39.) In Sumner v. Ferryman, (11 Mod. 201,) Powell, J. said, a man cannot avoid his bond by duress to his goods, but only to his person. (And see Astley v. Reynolds, 2 Str. 915.) But in South Carolina it has been held that duress of goods will, under some circumstances, avoid a man’s contract. (Sasportas v. Jennings, 1 Bay, 470; Collins v. Westbury, 2 id. 211; and see Nelson v. Suddarth, 1 Hen. &. Munf. 350.) I do not intend to say that a man can avoid his bond on the ground that it was procured by an illegal distress of goods ; but I entertain no doubt that a contract procured by threats and the fear of battery, or the destruction of property, may be avoided on the gromrd of duress. There is nothing but the form of a contract in such a case, without the substance. It wants the voluntary assent of the -party to be bound by it And Avhy should the Avrong-doer derive an advantage from his *159 tortious act? No good reason can be assigned for upholding such a transaction.
Under the charge of the judge and the finding of the jury, the pretended settlement was a void act, and the defendant acquired no title to the cattle. The plaintiff might have re-taken the property the next moment, if he could have done it without a breach of the peace. No demand before bringing suit was necessary. The defendant was a trespasser when he drove away the cattle. (Carey v. Hotaling, 1 Hill, 311, and cases cited.) That was a case of the sale and delivery of goods procured by fraud, and it was held that trespass, or replevin in the cepit, would lie. Although the owner voluntarily consented to part with the property, the consent was nullified by the fraud through which it was induced. Hero the plaintiff never consented to part with his property. It is the same thing as though the defendant had gone into the drove without a shadow of authority and taken the ten head of cattle.
The remaining part of the charge was sufficiently favorable to the defendant. The jury must have found, either that none of the defendant’s cattle Avere in the drove, or that the defendant abandoned the two yearlings which he claimed, as absolutely worthless: otherwise their verdict, folloAving the charge, would have been the other way. There is no evidence in the case that the leaving of the two yearlings with the plaintiff formed any part of the consideration for the settlement, and the defendant had said they looked so meager that he did not wish to take them.
If the defendant in fact OAvned the two yearlings Avhich he claimed, and they had been left Avith the plaintiff as a part of the consideration for the settlement, I should not have thought it entirely clear that the plaintiff must offer to restore them before bringing suit. One who obtains goods by fraud or violénce cannot make a good title by showing that he paid a part of the value of the property. When treated as a wrong-doer, the most that he can ask is to have the payment considered in the assessment of damages. But this question is not necessarily in the case.
*160 On the whole, we think the charge was substantially correct. Whether the jury were right upon any or all of the questions submitted by the judge, is a matter which cannot be reviewed on a bill of exceptions.
New trial denied.